CHRISTOPHER A. CROFTS
United States Attorney
C. LEVI MARTIN (WY BAR #6-3781)
Assistant United States Attorney
P.O. Box 668
Cheyenne, WY 82003-0668
Telephone: 307-772-2124
Email: christopher.martin@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF WYOMING**

| | | |
|---|---|---|
| JOSEPH V. LIBRETTI, JR. | ) | |
| | ) | Civil Case No. 14-cv-107-S |
| *Plaintiff, pro se,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TAYLOR COURTNEY, and | ) | |
| STEVEN WOODSON, | ) | |
| In Their Individual Capacities, | ) | |
| | ) | |
| *Defendants.* | ) | |

**STEVEN WOODSON'S RESPONSE TO
PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT**

Steven Woodson (Woodson), by and through Assistant United States Attorney, C. Levi Martin, hereby files his response to Plaintiff's (Libretti's) motion to alter or amend judgment granting Woodson's motion to dismiss, or in the alternative motion for leave to file an amended complaint.[1]  (Doc. 64).

---

[1] Although Libretti requests, alternatively, that he be allowed to file an amended complaint, he does not provide any analysis as to why he should be permitted to do so.  Accordingly, this response will not address the issue of amendment and this Court should not consider it further. *See Trustees of Utah Carpenters' & Cement Masons' Pension Trust v. Loveridge*, 567 Fed.Appx. 659, 661 (10th Cir. 2014) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived") (citation omitted).

## INTRODUCTION

In Libretti's latest vexatious litigation tactic,[2] he misconstrues this Court's Order, raises new arguments, and revisits issues already addressed. His motion should be denied.

## STANDARD OF REVIEW

"Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (citation omitted). A motion for reconsideration is "not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *See id.* (citation omitted).

## DISCUSSION

**I. Libretti has misconstrued this Court's findings.**

In his Rule 59 motion, Libretti asserts that "because the warrant did not allege that Breeden had informed Mr. Libretti that the purpose of his trip to Utah was to obtain methamphetamine, this Court erred in granting Woodson's motion to dismiss." (Doc. 64 at 2). However, this Court did not find that the warrant alleged as much.

As an initial matter, Libretti seems to ignore the fact that in his first amended complaint he did not dispute the veracity of the statement from Woodson's affidavit in support of application for search warrant that "Breeden advised Libretti that Breeden was traveling to Salt Lake City, Utah (to obtain methamphetamine)." (Doc. 14-2 at ¶ 48). Instead, Libretti took issue

---

[2] *See Libretti v. Woodson*; 1:13-cv-00932-DAP (Doc. 42) (In the summary denial of Libretti's Rule 59 motion from his companion Ohio case, the District Court order stated "Plaintiff has needlessly taxed public and private resources in litigating this case"); *see also Libretti v. Wyoming Atty. Gen.*, 60 Fed.Appx. 194, 198 (10th Cir. 2003) (Tenth Circuit noting that "[o]n three separate occasions" it had rejected an issue Libretti raised yet again in the new appeal, thus dismissing the current claim because it was frivolous and barred by res judicata).

with the way counsel for the United States interpreted the statement as meaning "Breeden confided to Libretti that he was traveling out of town to obtain methamphetamine." (Doc. 15 at 4 & 13). Counsel for the United States provided a notice of errata and explained that although counsel's interpretation was incorrect, the undisputed text from the affidavit was nonetheless accurate. *See* (Doc. 26). Accordingly, mere recognition and iteration of the text from that undisputed statement, as the Court provided, cannot be reasonably viewed as error, especially in light of the fact that the Court did not interpret that passage the way Libretti asserts.

Contrary to Libretti's reading, the Court's finding was not that Libretti knew Breeden was a methamphetamine dealer because Breeden stated his intent to travel to Utah to obtain methamphetamine. Instead, the Court's finding was that Libretti, who was previously convicted for drug trafficking activities, was again "consorting with methamphetamine dealers." (Doc. 57 at 13).[3] A fair and proper reading of the Order demonstrates that the Court viewed the March 24, 2010 phone call as yet another contact Libretti had with a man who was known by investigators to be obtaining and redistributing methamphetamine. Further, this undisputed fact was merely one of several undisputed facts which, cumulatively, created "a substantial probability that Mr. Libretti was committing a controlled substance violation." (Doc. 57 at 13).

Some of those additional undisputed facts include:

---

[3] Libretti makes a related argument that because he was only consorting with one known methamphetamine dealer, this Court erred in stating Libretti was "consorting with methamphetamine *dealers*" (plural). (Doc. 64 at 6) (emphasis added). First, the Court never stated Libretti *was* consorting with more than one methamphetamine dealer. Rather, the Court stated "the information [in the affidavit] *strongly indicated* . . . Libretti was consorting with methamphetamine dealers." (Doc. 57 at 13) (emphasis added). That was not error. It is a fair reading of the affidavit. More importantly, Libretti does not contest now, nor has he ever, that he was indeed consorting with a known methamphetamine dealer, and he provides no authority for the proposition that a more limited finding (that he was only consorting with one drug dealer versus two) would have materially impacted the legal analysis.

- Woodson, with his almost 30 years of investigating narcotics and money laundering violations, knew Libretti (formerly convicted of crimes involving illegal drugs) had made hotel arrangements for a methamphetamine dealer and discussed distribution of spice with the dealer in the same time frame the dealer was in Casper distributing methamphetamine. (Doc. 14-2 at ¶¶ 1-3; 40; 43).

- Libretti discussed with this methamphetamine dealer how lucrative the sale of "spice" was becoming, and some spice was known to be illegal. (Doc. 14-2 at ¶¶ 42, 44).

- The two agreed to meet so that the Breeden could purchase more spice from Libretti and when in public, Libretti used the code word "wallet" for "spice." (Doc. 14-2 at ¶ 43).

- On telephone intercepts Libretti admitted to being paranoid because he knew people were pleading guilty to the possession of spice, to which the methamphetamine dealer advised him to "clean house." (Doc. 14-2 at ¶ 48).

- Libretti told the methamphetamine dealer that he needed a person like him to distribute spice for him and they agreed to meet in person later to discuss their plans further. *Id.*

- The methamphetamine dealer was, not surprisingly, soon arrested transporting a large amount of methamphetamine in a rental car from Phoenix, Arizona to Wyoming for re-distribution. (Doc. 14-2 at ¶ 83).

- A review of a pen register of Libretti's phone revealed that on the day before the methamphetamine dealer and his companion traveled to Arizona, Libretti received calls from five different Phoenix, Arizona numbers and a call from that same methamphetamine dealer. (Doc. 14-2 at ¶ 86).

This Court had an ample basis for its conclusion that Woodson provided, "at a minimum, arguable probable cause" to justify the search warrant. (Doc. 57 at 13); citing *Stonecipher*, 759 F.3d 1134, 1141 (10th Cir. 2014) ("In the context of a qualified immunity defense on an unlawful search or arrest claim, we ascertain whether a defendant violated clearly established law 'by asking whether there was 'arguable probable cause' for the challenged conduct" which is just "another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists." (citation omitted).

Because this Court did not make the finding which Libretti asserts was made, there was no error. Even if the Court had made such a finding, the additional undisputed facts itemized

above would still be sufficient to sustain the ruling that arguable probable cause existed for issuance of the warrant. In either case, Libretti has failed to establish a "manifest injustice" occurred. *Servants of the Paraclete*, 204 F.3d at 1012 (required showing for successful Rule 59 motion).

**II.     A motion to alter or amend a judgment cannot be premised upon new arguments that could have been raised prior to judgment.**

In his motion for reconsideration, Libretti argues, for the first time, that he disputes the seizing officers were unable to distinguish between legal and illegal spice at the time of seizure. (Doc. 64 at 6-7). This new argument is not only raised too late, but it does not cure the deficiencies of the first amended complaint, and it ignores the totality of this Court's Order.

A.     <u>Libretti has not previously alleged or argued his spice was distinguishable from illegal spice.[4]</u>

It is important to view Libretti's late-made argument in the proper context. In his first amended complaint, Libretti alleged the search warrant was unconstitutionally overbroad (or, in the alternative, lacked specificity) because it allowed for seizure of all spice,[5] even spice which was not illegal. (Doc. 5 at ¶¶ 18-39). Woodson's argument, in support of his motion to dismiss for failure to state a claim, was that Libretti's pleading was deficient because he failed to allege there was a way for the seizing officers to have tested the various compounds at the scene in order to determine whether Libretti's spice was illegal. *See* (Doc. 15 at 16, n. 9). Woodson argued in light of the circumstances, the scope of the warrant was as specific and particularized

---

[4] Regardless of whether Libretti personally disagrees with the Sixth Circuit's statement that it "is impossible to distinguish, with the naked eye, between legal herbs and those that have been chemically altered," it is still valid precedent. *Libretti v. Woodson*, --Fed.Appx.--, 2015 WL 221617 *4 (6th Cir. 2015).

[5] Again, for purposes of this discussion, the term "spice" refers to either JWH-018 (an active ingredient in spice), the herbs (the leafy substance which is applied with JWH-018 or other similar compound), or the final product of the two combined.

as it could be. *See* (Doc. 15 at 15-16) (argument with citation to *United States v. Wicks*, 995 F.2d 964, 973 (10th Cir. 1993) ("a warrant describing items to be seized in broad generic terms may be valid if the description is as specific as circumstances and nature of the activity under investigation permit") (citation and internal quotations omitted)).

In his response to the motion to dismiss, Libretti did not address this critical failing regarding distinguishability, *at all*. *See* (Doc. 32 at 10-14).[6] Rather, he simply repeated the bald conclusions and the formulaic recitation of elements for his cause of action from his first amended complaint. *See* (Doc. 32 at 10-14). This was inadequate. A rule 12(b)(6) motion to dismiss requires "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* "[A] plaintiff must 'nudge [ ] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007), quoting *Bell Atl. Corp.*, 550 U.S. at 547. Libretti failed in this regard. In addition to the deficient pleading, he failed to argue (or even mention) distinguishability in his response to the motion to dismiss. *See Servants of the Paraclete*, 204 F.3d at 1012 (motion for reconsideration is not an appropriate mechanism to advance new arguments). There was no clear error in granting the motion to dismiss.

B.  <u>Qualified immunity applies equally to reasonable mistakes of law and fact.</u>

Libretti's new argument lacks merit for the additional reason that it fails to account for the context in which the analysis sits—qualified immunity. As this Court further observed, "qualified immunity applies equally to reasonable mistakes of law and fact." (Doc. 57 at 15)

---

[6] Notably, Libretti did not attempt to rectify this fatal deficiency in his proposed second amended complaint either.

(citation and internal quotations omitted). The warrant identified "spice" and "any other controlled substances including but not limited to methamphetamine" as targets of the seizure. *See* (Doc. 14-4 at 5). To the extent Libretti now argues the agents should have been able to determine which substances were controlled substances, he failed to plead or argue how Woodson's factual evaluations were constitutionally unreasonable, not merely mistaken. Libretti failed to allege or argue that under the specific context of this case, (not as a general proposition), that it was unreasonable to not further specify the subjects of the warrant. *See Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009) ("inquiry into whether a constitutional right was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition") (citation and internal quotation omitted). Because qualified immunity was asserted, it was Libretti's burden to cite authority which demonstrated "fair warning that the officer's conduct would violate constitutional rights." *Id.* (citation and internal quotations omitted). He failed to do so, and Woodson was entitled to qualified immunity as a result.

### III. Libretti's arguments regarding seizure of funds have already been considered and properly rejected by this Court.

The arguments made in the motion to reconsider in relation to the seizure warrant are just slightly modified versions of those previously provided in Libretti's response to Woodson's motion to dismiss. Accordingly, they deserve no consideration. *See Servants of the Paraclete*, 204 F.3d at 1012 (motions under Rules 59 and 60 are "inappropriate vehicles to reargue an issue previously addressed by the court"). As this Court properly found, the unchallenged allegations from Woodson's affidavit "established at least arguable probable cause to support the seizure warrant." (Doc. 57 at 22). Libretti does not cite an intervening change in the controlling law, nor does he present new evidence previously unavailable or demonstrate the need to correct clear

error or prevent manifest injustice. *See Servants of the Paraclete,*, 204 F.3d at 1012 (listing reasons to grant a Rule 59 motion).

## CONCLUSION

For the foregoing reasons, this Court should deny Libretti's motion to reconsider this Court's Order granting Woodson's motion to dismiss.

DATED this 4th day of May, 2015.

> Respectfully Submitted,
>
> CHRISTOPHER A. CROFTS
> United States Attorney

By: */s/ C. Levi Martin*
C. LEVI MARTIN
Assistant United States Attorney

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that on May 4, 2015, a copy of the **STEVEN WOODSON'S RESPONSE TO PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT** has been served upon the following by the method(s) indicated below:

Joseph V. Libretti, Jr.
1900 East 30th Street #305
Cleveland, OH 44114
*Pro Se*

[ ] By Facsimile
[X] U.S. Mail – certified/return receipt
[ ] By Hand Delivery
[ ] By Electronic Filing

*Vaughna Warburton*
United States Attorney's Office